UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
ANNA CRUZ,                                    )
                                              )
        Plaintiff,                            )
                                              )
            v.                                )        Civil Action No. 13-11127-LTS
                                              )
BOSTON LITIGATION                             )
SOLUTIONS, et al.,                            )
                                              )
        Defendants.                           )
_____ )


REPORT AND RECOMMENDATION ON
HAYSTACKID, LLC'S MOTION FOR SUMMARY JUDGMENT
[Docket No. 190]

May 19, 2016

Boal, M.J.

        In this action, plaintiff Anna Cruz alleges, inter alia, that her former employer, Boston

Litigation Solutions, LLC ("BLS") failed to pay her overtime and minimum wages,

discriminated against her on the basis of a perceived disability, and invaded her privacy in

violation of Massachusetts law.  Cruz also brings claims against HaystackID, LLC ("Haystack")

on the theory that Haystack is BLS's successor.  Haystack has filed a motion for summary

judgment.  Docket No. 190.[1]  For the following reasons, the Court recommends that the District

Judge assigned to this case deny the motion.

---

[1] On January 9, 2015, the District Court referred the case to the undersigned for full pretrial
proceedings.  Docket No. 71.

I.     PROCEDURAL BACKGROUND

Cruz filed this action on May 8, 2013.  Docket No. 1.  On February 25, 2014, Cruz filed

an amended complaint.  Docket No. 26.

On July 1, 2015, this Court granted in part and denied in part Cruz's motion to file a

further amended complaint.  Docket No. 114.  Cruz filed her Second Amended Complaint on

July 6, 2015.  Docket No. 116.  Among other things, the Second Amended Complaint added

Haystack as a defendant as to all claims based on a successor liability theory.

On February 24, 2016, Haystack filed the instant motion for summary judgment.  Docket

No. 190.  Cruz filed her opposition on March 24, 2016.  Docket No. 197.  Haystack filed a reply

on April 7, 2016.  Docket No. 201.  The Court heard oral argument on May 18, 2016.

II.    FACTS[2]

In June 2007, Jefferey Stevens founded BLS.[3]  BLS was organized under the laws of

Massachusetts with Stevens as manager.[4]  BLS's 2008 Annual Report added Kevin Glass and

Nicole (Goddard) Glass as co-managers along with Stevens.[5]  BLS's 2009 Annual Report lists

---

[2] Because this case is before the Court on a motion for summary judgment, the Court sets out any properly disputed facts in the light most favorable to the non-moving party.  See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).  The facts are derived from HaystackID, LLC's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Docket No. 192) ("Def. SOF"); Plaintiff's Response to HaystackID, LLC's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Docket No. 197-1 at 1-14) ("Pl. Resp."); Plaintiff's Statement of Disputed Facts (Docket No. 197-1 at 14-20) ("Pl. SOF"); and HaystackID, LLC's Response to Plaintiff's Statement of Facts (Docket No. 206) ("Def. Resp.").

[3] Def. SOF ¶ 1; Pl. Resp. ¶ 1.

[4] Pl. SOF ¶ 2; Def. Resp. ¶ 2.

[5] Pl. SOF ¶ 2; Def. Resp. ¶ 2.

Stevens, Nicole Glass and Kevin Glass as managers.[6]  BLS's 2010, 2011, and 2012 Annual

Reports list only Stevens and Kevin Glass as managers.[7]

      BLS provided electronic discovery, data processing, and imaging services for law firms.[8]

BLS also performed paper production services for its customers.[9]  BLS maintains that it only did

work local to the Boston market and did no business outside of the state.[10]  However, BLS

provided services to law firms with offices in other states and DaVita, one of its customers, had

no offices in Massachusetts.[11]

      Kevin Glass was a part owner of BLS.[12]  BLS maintains that Kevin Glass's ownership

ended in 2013 because his vesting period had concluded.[13]  During discovery, BLS, Stevens and

Kevin Glass characterized the transaction differently, stating that Kevin Glass's ownership had

been "earned out" or "whittled out."[14]  On February 1, 2013, Kevin Glass executed a resignation

---

[6] Pl. SOF ¶ 2; Def. Resp. ¶ 2.

[7] Pl. SOF ¶ 2; Def. Resp. ¶ 2.

[8] Pl. SOF ¶ 1; Def. Resp. ¶ 1.

[9] Pl. SOF ¶ 1; Def. Resp. ¶ 1.

[10] Def. SOF ¶ 14.

[11] Pl. Resp. ¶ 14.

[12] Def. SOF ¶ 2; Pl. Resp. ¶ 2.

[13] Def. SOF ¶ 3.

[14] Pl. Resp. ¶ 3.  While BLS has produced a document memorializing his resignation as managing member of BLS, no documents memorializing or relating to Kevin Glass "earning out" his interest in BLS and delivering it to Stevens, such as contracts, IRS 1099B forms, documentation of income or loss on IRS Schedule D, or gift tax forms, were produced in discovery, despite their responsiveness to Request No. 1 of Cruz's second request for production of documents.  Pl. SOF ¶ 4; Def. Resp. ¶ 4.

as managing member of BLS.[15]  Cruz alleges, however, that Kevin Glass continued to have an

active role in the management of BLS until it ceased operations in June 2013.[16]

Stevens and Glass assert that in late 2012, BLS was failing because the eDiscovery

market was evolving.[17]  The market was moving from paper to forensics and BLS was not

equipped for complex eDiscovery work.[18]  Stevens decided to shut down BLS and "downsize all

employees."[19]

Haystack maintains that it was organized in Delaware as a limited liability company in

March 2011.[20]  Cruz disputes the date of organization as the Foreign Limited Liability Company

Application for Registration which was filed with the Massachusetts Secretary of State listed

Haystack's date of organization as June 29, 2007.[21]  Haystack asserts that the date listed in the

Foreign Limited Liability Company Application was a typographical error by the company's

accountant who filed the application.[22]

Kevin and Jason Glass created Haystack to provide international end-to-end eDiscovery,

digital forensics services, and litigation-preparedness solutions.[23]  Its focus is to offer

---

[15] Docket No. 192-1.

[16] Pl. SOF ¶ 6.

[17] Affiderey of Jefferey Stevens (Docket No. 192-1) ("Stevens Aff.") at ¶ 8.

[18] Stevens Aff. at ¶ 8.

[19] Stevens Aff. at ¶ 8.

[20] Def. SOF ¶ 5.

[21] Pl. Resp. ¶ 5.

[22] Def. SOF ¶ 6.

[23] Def. SOF ¶ 8; Pl. Resp. ¶ 8.

sophisticated litigation response consulting, managed services, and forensic experts that can testify for clients.[24]  Haystack developed proprietary software to manage data more effectively and to manage potential evidence for litigation.[25]

Kevin Glass is Haystack's Chief Executive Officer ("CEO").[26]  Jason Glass is the Executive Vice President.[27]  The Operating Agreement also lists Nicole Glass as a party.[28] Haystack's Foreign Limited Liability Company Application for Registration in Massachusetts, dated June 26, 2013, lists Kevin Glass, Nicole Goddard, and Jefferey Stevens as managers.[29] Haystack's 2014 Annual Report lists Kevin Glass, Nicole Goddard, and Jefferey Stevens as managers.[30]  Again, Haystack asserts, without more, that these dates are mistakes.

Haystack rented office space at 21 Congress Street in Salem, Massachusetts and 1 International Place in Boston, Massachusetts.[31]  Haystack also occupied space at 100 Franklin Street, the same space occupied by BLS.[32]

---

[24] Def. SOF ¶ 18; Pl. Resp. ¶ 18.

[25] Def. SOF ¶ 19; Pl. Resp. ¶ 19.

[26] Affidavit of Kevin D. Glass (Docket No. 192-4) ("K. Glass Aff.") at ¶ 3.

[27] Affidavit of Jason Glass (Docket No. 192-5) at ¶ 3.

[28] Docket No. 192-4 at 5-7.

[29] Ex. E to Affidavit of Rebecca C.E. Tatem (Docket No. 197-2) ("Tatem Aff.").

[30] Ex. E to Tatem Aff.

[31] Def. SOF ¶ 11; Pl. Resp. ¶ 11.

[32] Def. SOF ¶ 12.  Haystack claims that in September 2012, it entered into a sublease with BLS for space at 100 Franklin Street.  Stevens Aff. at ¶ 7.  In June 2013, the parties modified the sublease to include limited use of BLS' equipment.  Id.  Haystack has submitted the sublease and amendment as part of its exhibits supporting its motion for summary judgment.  Docket No. 192-1 at 11-13.  The sublease was not produced during discovery, see Tatem Aff. at ¶ 3, despite being responsive to Request No. 4 to Cruz's Second Request for Production of Documents, and despite the Court's order granting Cruz's motion to compel with respect to that request.  See Docket

In June 2013, Kevin Glass came into the BLS's offices at 100 Franklin Street and met with employees regarding the termination of their employment at BLS.[33]  At least one employee (Carline Duroska) testified that Kevin Glass told employees that the company name was going to change to HaystackID.[34]  When Duroska asked Kevin Glass whether they were "going to be doing the same thing," Kevin Glass responded "oh, yes, we're going to be doing [sic] – just the name is going to change."[35]  Kevin Glass personally met with BLS' employees and laid them off from BLS and then hired them as Haystack employees, sometimes in the same meeting.[36]  Duroska testified that she was not given a final paycheck from BLS and that her next biweekly paycheck contained one week of pay from BLS and one from Haystack.[37]

BLS terminated its contract with HRO, an outside human resources consulting company, in June or July of 2013.[38]  In June or July 2013, Haystack entered into a contract with HRO.[39]  Haystack denies that it hired all of BLS's employees, but HRO believed that Haystack hired all

---

90 at 8.  At oral argument, BLS's current counsel stated that he found the document because it was not in BLS's files but in the files of one of its principals.  The Court also notes that during Stevens's deposition, when asked about this arrangement, he testified that "Haystack paid BLS and then BLS made its normal rent payments to the landlord."  Deposition of Jefferey Stevens (Docket No. 192-3) ("Stevens Dep.") at 156.  When asked "[s]ort of like a sublease?," he responded "[i]n theory."  Id.  His testimony did not suggest that any kind of formal sublease agreement was in place.

[33] Pl. SOF. ¶ 6.

[34] Pl. SOF ¶ 6.

[35] Pl. SOF ¶ 6.

[36] Pl. SOF ¶ 6.

[37] Pl. SOF ¶ 6.

[38] Pl. SOF ¶ 7.

[39] Pl. SOF ¶ 7.

of the employees laid off by BLS.[40]   HRO did not believe that there was any interval of time

between the end of BLS and the beginning of Haystack.[41]

For approximately two years after June of 2013, Haystack continued the same operations

in paper production which had been performed by BLS at the Franklin Street location.[42]

Haystack paid rent to BLS and BLS paid the rent to the landlord.[43]   Haystack vacated the

Franklin Street location when BLS's lease was over.[44]   Paper production services continued on

the same equipment which BLS used, although some equipment was replaced in the ordinary

course of business and other equipment was returned when the lease expired.[45]   BLS effectively

stopped doing business after June of 2013, when it laid off its employees, who were then hired

by Haystack to perform the same job functions.[46]   BLS, however, has not formally dissolved.[47]

---

[40] Pl. SOF ¶ 7.

[41] Pl. SOF ¶ 7.  Haystack disputes this statement, see Def. Resp. ¶ 7, but the materials cited do not contradict it.

[42] Pl. SOF ¶ 8.

[43] Pl. SOF ¶ 8.

[44] Pl. SOF ¶ 8.

[45] Pl. SOF ¶ 8.

[46] Pl. SOF ¶ 8.  Haystack also disputes the statements contained in paragraph 8 of Cruz's statement of disputed facts, see Def. Resp. ¶ 8, but the materials cited do not contradict them.

[47] Def. SOF ¶ 26; Pl. Resp. ¶ 26.

Many of Haystack's clients had been clients of BLS.[48]  Immediately after BLS ceased operations, Haystack received business from McDermott, Will & Emery ("MWE"), one of BLS's largest clients.[49]  Haystack's business from MWE slowed down around 2015.[50]

This lawsuit was filed on May 8, 2013.  Docket No. 1.  Starting on May 9, 2013, the Essex County Sheriff's Office made six attempts to serve Kevin Glass, BLS's registered agent, at the address listed in the Secretary of State's website, which was also his home address.[51]

On June 4, 2013, BLS filed a Restated Certificate of Organization, which stated:

> KEVIN GLASS HAS BEEN REMOVED AS THE REGISTERED AGENT AND IT HAS BEEN CHANGED TO JEFFEREY STEVENS. KEVIN GLASS HAS ALSO BEEN REMOVED AS A MANAGER. KEVIN GLASS HAS ALSO BEEN REMOVED FROM AUTHORITY TO EXECUTE DOCUMENTS TO BE FILED WITH THE CORPORATIONS DIVISION.   KEVIN GLASS HAS ALSO BEEN REMOVED FROM AUTHORITY TO EXECUTE ANY RECORDABLE INSTRUMENT PURPORTED TO AFFECT AN INTEREST IN REAL ESTATE.[52]

This filing also updated the Registered Agent to Stevens and the Registered Agent's address to 100 Franklin Street in Boston.[53]

On June 20, 21, and 24, the Essex County Sheriff's Office attempted service at 100 Franklin Street.[54]  A Suffolk County Sheriff's Department Civil Process Division Diligent

---

[48] Pl. SOF ¶ 10.

[49] Pl. SOF ¶ 10.

[50] Pl. SOF ¶ 10.

[51] Pl. SOF ¶ 3.

[52] Pl. SOF ¶ 4.

[53] Pl. SOF ¶ 4.

[54] Ex. O to Tatem Aff.

Search form states, in relevant part: "Unable to obtain definite answers on person in charge. Other than they were a new co.  Did get to speak to Mr. Scott Parker, informing me of new co. called Haystack ID.  Told me Solutions moved out 2 weeks ago."[55]  The form also stated that the "Bldg. super stated they were still vendor."[56]

On December 3, 2014, Attorney Trevor Findlen filed a notice of appearance on behalf of BLS.[57]  The notice listed Mr. Findlen's address as "HaystackID, LLC, 6 Beacon Street, Suite 815, Boston, MA 02108."[58]  His email address was listed as tfindlen@haystackid.com.[59]  On September 16, 2015, Mr. Findlen filed a notice of appearance on behalf of Haystack.[60]  Attorney Jeremy Bombard entered an appearance for both BLS and Haystack after Attorney Findlen withdrew from representing them.[61]  Mr. Bombard is in-house counsel for Haystack.[62]

---

[55] Ex. O to Tatem Aff.

[56] Ex. O to Tatem Aff.

[57] Docket No. 60.

[58] Docket No. 60.  In her Statement of Disputed Facts, Cruz asserts that during this litigation, the name "HaystackID" appeared on her counsel's caller ID from approximately November 2014 onward, after Mr. Findlen entered an appearance in this case.  Pl. SOF ¶ 13.  She also states that a news release dated October 26, 2015 identified Mr. Findlen as a Haystack employee.  Id. Curiously, Haystack has disputed these statements, stating that there is no evidence to support the caller ID claim and that the news release does not actually state that Mr. Findlen was an attorney or employee of Haystack.  Def. Resp. ¶ 13.  While Haystack's statements may be technically correct, it is not clear why Haystack would appear to dispute the assertion that Mr. Findlen worked for it at the time he entered an appearance in this case.  In fact, at oral argument, Haystack's current counsel did not dispute that Mr. Findlen worked for Haystack.

[59] Docket No. 60.

[60] Docket No. 132.

[61] Pl. SOF ¶ 14; Def. Resp. ¶ 14.

[62] Pl. SOF ¶ 14; Def. Resp. ¶ 14.

III.    ANALYSIS

A.    Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  However, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and

10

the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

      B.    <u>Issues Of Fact Preclude Summary Judgment</u>

      Haystack argues that Cruz has not presented sufficient evidence to hold it liable for BLS's actions on a theory of successor liability.  Docket No. 191 at 7-12.  The Court finds that issues of fact preclude summary judgment.

      "In Massachusetts, as in most jurisdictions, the general rule is that one corporation may ordinarily purchase all of the assets of another without taking on any of its liabilities."  <u>Nat'l Gypsum Co. v. Continental Brands Corp.</u>, 895 F. Supp. 328, 333 (D. Mass. 1995) (citations omitted).  There are four exceptions to this general rule; liability may be imposed if "(1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor."  <u>Milliken v. Duro Textiles, LLC</u>, 451 Mass. 547, 556 (2008).  "[A] determination of whether a predecessor corporation continues to exist for purposes of successor liability is wholly fact specific."  <u>Id.</u> at 559.  "No single indicator of succession is controlling."  <u>Id.</u> at 558.

      Cruz argues that successor liability attaches to Haystack under the de facto merger, mere continuation, and fraud theories of successor liability.  Docket No. 197 at 7-13.

      While the labels "de facto merger" and "mere continuation" "have been enshrined separately in the canonical list of exceptions to the general rule of no successor liability, they appear, in practice to refer to the same concept, and courts have often used the two terms interchangeably."  <u>Nat'l Gypsum Co.</u>, 895 F. Supp. at 336.  The concept of de facto merger has usually been applied to situations in which the ownership, assets and management of one

corporation are combined with those of another, preexisting entity while a mere continuation has been most often found where the owners of the selling entity set up the buyer with the specific purpose of continuing their business under a new form.  Id.

Courts consider the following factors in determining whether a transfer of assets should be considered a de facto merger so as to warrant successor liability:

> Whether (1) there is a continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Milliken, 451 Mass. at 557 (quoting Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-360 (1997)).

Similarly, in evaluating whether a purchasing company is a "mere continuation" of the seller such that successor liability should attach, courts consider "at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets."  Id. (citation omitted).  "[T]he imposition of liability on the purchaser is justified on the theory that, in substance if not in form, the purchasing corporation is the same company as the selling corporation."  Id. (citation omitted).

In determining whether a transfer was made with fraudulent intent, Massachusetts courts have identified several factors, including "(1) actual or threatened litigation against the transferor; (2) a purported transfer of all or substantially all of the transferor's property; (3) insolvency or other unmanageable indebtedness on the part of the transferor; (4) a special

relationship between the transferor and the transferee; and (5) retention by the transferor of the

property involved in the putative transfer." In re QR Properties, LLC, 485 B.R. 20, 25 (Bankr.

D. Mass. 2013) (internal modifications omitted).  "Lack of, or inadequate, consideration is also

an indication of possible fraudulent intent." Id. (citations omitted).

Haystack argues that Cruz has not provided any evidence of a transfer of assets from BLS

to Haystack, which is "an essential prerequisite to successor liability."  Docket No. 191 at 7

(citing Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 475 (2013)).  However, "there is no

single definition of 'successor' applicable in every legal context." E.E.O.C. v. Preferred Labor

LLC, No. 06-40190-FDS, 2009 WL 415429, at *2 (D. Mass. Feb. 13, 2009) (citing Howard

Johnson Co. v. Detroit Local Joint Executive Board, 417 U.S. 249, 264 n. 9 (1974)).  It appears

that courts apply a more flexible standard in employment cases.  See id. at *2-3.  "The

imposition of successor liability may be appropriate when the successor has essentially continued

the operations of the predecessor." Id. at *3. "That inquiry is not dependent on the manner in

which the assets of one company were transferred to the other." Id. (citing Asseo v. Centro

Medico Del Turabo, Inc., 900 F.2d 445, 451 (1st Cir. 1990)).

In any event, at this juncture, Cruz has presented sufficient evidence that Haystack

continued to use all of BLS's equipment after BLS ceased operations.[63] See, e.g., Pl. Resp. ¶¶

36, 37.  Haystack maintains that it simply sublet the equipment from BLS and that it assumed

none of BLS's leases.  Def. SOF ¶ 37.  Interestingly, however, and as far as this Court can tell

from the materials submitted by the parties, there was no indication during discovery that such a

formal sublease existed.  The Court is troubled that the sublease was not produced during

---

[63] The Court also notes that it appears that BLS earned approximately $1,550,250.15 in its last
six months of operation.  Docket No. 198-2 at 4-6.  There is nothing in the record to show the
disposition of this revenue after BLS closed.

discovery, despite it being responsive to Cruz's discovery requests and a Court order mandating its production.  <u>See</u> Tatem Aff. at ¶ 3.  It was not until Haystack moved for summary judgment that the sublease was submitted in connection with the motion.  Docket No. 192-1.  Especially in light of the number of other facts in dispute regarding successor liability, as detailed below, the Court finds that it is inappropriate to grant summary judgment in favor of Haystack.

Cruz has presented evidence that after BLS ceased operations in June 2013, Haystack continued to operate the same line of business in the same location, hiring many if not most of BLS's employees and largely servicing the same customers.  Pl. Resp. ¶ 7; Pl. SOF ¶ 10.  At least one employee testified that Kevin Glass came into BLS's offices and told employees that BLS would be changing its name to Haystack but that nothing else would change.  Duroska Deposition p. 27.  That same employee testified that she started working at Haystack the very next day, doing the same work and reporting to the same people.  <u>Id.</u> at p. 29-34.  She also testified that her next paycheck contained payment for her last week at BLS as well as her first week as a Haystack employee.  <u>Id.</u> at p. 30.  Another employee, Scott Parker, also testified that he was laid off and hired to work for Haystack the same day, within an hour and a half.  Parker Deposition p. 17-18.  He came back to work for Haystack at the same location the next day.  <u>Id.</u> at p. 19-20.

In addition, there is evidence of continuity of members and managers.  While Haystack maintains that it was founded by Kevin and Jason Glass and that Jefferey Stevens had no involvement in Haystack until March 2014, when he was hired as the Chief Technology Officer, Haystack's Application for Registration as a Foreign Limited Liability Company, dated June 26, 2013, lists Mr. Stevens as one of its managers.  <u>Compare</u> Stevens Aff. at ¶ 12 and Glass Aff. at ¶¶ 4, 21 <u>with</u> Ex. E to Tatem Affidavit.  He is also listed as a person "authorized to execute,

14

acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court." Id.

While Haystack also maintains that Kevin Glass was no longer a member or manager of BLS as of February 2013, there is evidence in the record that he continued to have a role in BLS through June 2013.  Pl. SOF ¶ 6.  Other than Kevin Glass's resignation, there are no documents memorializing or relating to Glass "earning out" his interest in BLS and delivering it to Stevens and no money or anything of value changed hands at that time.  Pl. SOF ¶ 4.  In addition, Nicole Goddard Glass and Jason Glass also appear to have had roles in both BLS and Haystack.  Exs. D and E to Tatem Aff.; Pl. Resp. ¶ 46; see also Docket No. 198-2 at 15, 52, 55.

Although BLS continues to exist, that fact alone does not preclude a finding of successor liability.  See Milliken, 451 Mass. at 559 (continued existence of predecessor corporation did not preclude imposition of successor liability); Cargill, 424 Mass. at 361 ("While formal dissolution of the corporate entity is one aspect to consider, the requirements of the third factor are met because [the company] ceased its ordinary business operations and liquidated its assets.").  The record shows that although BLS has not been dissolved, it ceased operations in June 2013 and currently exists in name only.  Stevens Aff. at ¶ 10.

The Court also notes that in-house counsel for Haystack represents BLS in this matter. While it is not uncommon for outside counsel to represent several defendants in one case, it appears highly unusual for *in-house counsel* for one company to represent another company that it maintains is entirely unrelated.[64]  Taking all of this evidence together, and interpreting it in the light most favorable to Cruz, the Court is unable to conclude at this time that there would be

---

[64] At oral argument, counsel for Haystack and BLS acknowledged that the arrangement is unusual.  He stated that BLS is unable to afford counsel and that Haystack is providing legal representation to BLS as a favor from Kevin Glass to his close friend, Jefferey Stevens.

insufficient evidence to support a finding of a de facto merger or that Haystack is a mere continuation of BLS.

There is also evidence to suggest fraudulent intent.  This case was filed on May 8, 2013.  Docket No. 1.  BLS did not cease operations, and Haystack did not file its application for registration to do business in Massachusetts until June 2013, after Cruz had attempted service multiple times.  Tatem Aff. at ¶ 18 and Ex. O.  BLS itself states that it was failing in 2012 and that it had failed to pay taxes, which may be evidence of insolvency.  Stevens Aff. ¶ 8; Pl. SOF ¶ 4.  Recently, BLS stated that it cannot pay a sanctions award of $14,866.89.  Docket No. 203.  In addition, there appears to be a special relationship between BLS and Haystack.

Accordingly, the Court finds that issues of fact exist regarding whether Haystack is the successor of BLS for purposes of liability in this case.

IV.    <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that the District Judge assigned to this case deny Haystack's motion for summary judgment.

V.    <u>REVIEW BY DISTRICT JUDGE</u>

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge